# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **VITORIA TELECOM, LLC** | § | |
| | § | |
| **V.** | § | **A-20-CV-279-LY** |
| | § | |
| **MET ONE LLC, MERCHANT EQUITY** | § | |
| **TELECOM, LLC and FAISAL HAMDARD** | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and Failure to State a Claim, and in the Alternative, Motion to Transfer Venue (Dkt. No. 14); Plaintiff's Response (Dkt. No. 22); Defendants' Reply (Dkt. No. 24); and Plaintiff's Surreply (Dkt. No. 30). The District Court referred the motion to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. §636(b) and Rule 1(c) of Appendix C of the Local Court Rules.

## I. FACTUAL BACKGROUND

This suit concerns a dispute over competing claims for control over a limited liability company, Braz Towers, LLC. Dkt. No. 1 at ¶ 2. Braz Towers was formed in October 2012 to serve as the holding company for a Brazilian entity named Telecom Torres Para Celulares LTDA. Telecom Torres acquires, owns, and operates cell phone towers in Brazil. *Id.* at ¶ 10. In 2014, Braz Towers borrowed approximately $2.4 million from a group of seven individuals. One of the lenders, Robert DeLillo, lived in Texas, while the remainder of the individual lenders were residents of Colorado, New Jersey, and Florida. Dkt. No. 14-4.

Each lender entered into a separate Secured Note Purchase Agreement. Dkt. Nos. 14-2 and 14-3. Braz Towers's two owner-members, Defendants MET One, LLC, and Merchant Equity Telecom, LLC, pledged their membership interests in Braz Towers as collateral for the notes. Dkt. No. 1 at ¶ 11; Dkt. No. 14-4. All of the loan documents were prepared by a Florida law firm at the request of Jeffrey Gwin, who was a Florida resident and the manager of Braz Towers at the time of the loans. Dkt. No. 14 at 2. Once they signed them, each note holder returned the executed loan documents to Gwin or the Florida law firm, and each wired the amount they agreed to finance to Braz Towers' bank account in Florida. Dkt. Nos. 14-2, 14-3, and 14-4.

On May 5, 2018, Faisal Hamdard became manager of MET One, Braz Towers, and various related entities. Hamdard lives and works in New York. Dkt. No. 14-1. On May 7, 2018, Braz Towers, MET One, Merchant Equity and the original note holders entered into a series of agreements that amended the notes and extended their maturity dates. Dkt. No. 14-6. Thereafter, Merchant Equity conveyed its interest in Braz Towers to MET One, making MET One the sole owner and member of Braz Towers. Merchant Equity was then administratively dissolved by the Florida Department of State. Dkt. Nos. 14-1 and 14-8. It is an inactive corporation, and as such remains a citizen of Florida. Dkt. No. 14-9. Then, in August 2019, one of the New Jersey-based lenders assigned all of his rights in his notes to Plaintiff Vitoria Telecom, LLC. Dkt. No. 14-5. Vitoria is a Delaware limited liability company with its principal place of business in Travis County, Texas. Dkt. No. 1 at ¶ 2. Vitoria alleges it is now the holder of two notes in the aggregate principal amount of $600,000. Dkt. No. 1 at ¶ 13; Dkt. No. 14-3 and 14-5.

In this suit, Vitoria asserts that Braz Towers defaulted on the notes on January 29, 2020, and as a result, each of the lenders became automatically entitled to exercise the voting rights of 100%

of the membership interests of Braz Towers, as provided by the loan documents. Vitoria asserts that following Braz Towers' default it was appointed to serve as a Collateral Agent, charged with collecting the amounts due to all lenders, and with adopting a new operating agreement for Braz Towers, removing the current management, and taking over the management of the company. As a result, Vitoria's Austin, Texas, counsel demanded that Defendants cease and desist management of Braz Towers, turn over its books and records, and provide other information concerning the accounts or property of Braz Towers. In this suit Vitoria requests a declaration that it has the authority to control Braz Towers, and also alleges a claim for breach of contract. It further requests preliminary and permanent injunctions.

Noting that MET One is a Florida limited liability company with headquarters in New York City, Hamdard, is a New York resident with a registered agent in Miami, Florida, and Merchant Equity is an inactive Florida limited liability company, the Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b) for lack of personal jurisdiction, improper venue, and failure to state a claim. Alternatively, they move to transfer the case to Miami, Florida. Vitoria opposes the motion, and asserts that jurisdiction and venue are proper in Austin, Texas.

## II. ANALYSIS

Defendants argue that the Court lacks specific jurisdiction over them because: (1) the loan documents state that any disputes relating to the loans are governed by Florida law; (2) the parties explicitly agreed to submit to jurisdiction in Florida; and (3) they do not have the required minimum contacts with Texas, and the fact that Vitoria and Robert DeLillo, one of the note holders, are based in Texas is merely fortuitous. In response, Vitoria argues that the Defendants' interactions with DeLillo and Vitoria in Texas are sufficient to support personal jurisdiction over each of them here.

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. The plaintiff has the burden of establishing jurisdiction. *Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 233 (5th Cir. 2016). If, as here, the court rules on personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only establish a prima facie case of personal jurisdiction. *Id.* "Proof by a preponderance of the evidence is not required." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019) (quoting *Johnson v. Multidata Sys. Int'l Corp.* 523 F.3d 602, 609 (5th Cir. 2008)). In determining whether the plaintiff has presented a prima facie case of personal jurisdiction, the court "must accept the plaintiff's uncontroverted allegations, and resolve in his favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Patterson*, 826 F.3d at 233.

A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant if the state's long-arm statute permits an exercise of jurisdiction over that defendant and an exercise of jurisdiction would comport with the requirements of the Due Process Clause of the Fourteenth Amendment. *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018); *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). Because the requirements of the Texas long-arm statute are coextensive with the demands of the Due Process Clause, the sole inquiry is whether this court's exercise of personal jurisdiction over the defendant would be consistent with due process. *Sangha*, 882 F.3d at 101. This requires a plaintiff to show: (1) the defendant purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state, and (2) the exercise of personal jurisdiction over that

defendant does not offend traditional notions of "fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).

A defendant's "minimum contacts" may give rise to either specific or general personal jurisdiction, depending on the nature of the suit and the defendant's relationship to the forum state. *Sangha*, 882 F.3d at 101. For minimum contacts to exist, "a defendant must have purposefully availed himself of the benefits and protections of the forum state such that he should reasonably anticipate being haled into court there." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (citation omitted) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985)). "That requirement is the 'constitutional touchstone' of personal jurisdiction. It 'ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person.'" *Id.* at 193-94.

As noted, though there are two type of jurisdiction that may be established through the "minimum contacts" analysis—specific and general—Vitoria only relies on specific jurisdiction in its argument, and the Court therefore need only address that issue. "In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Goodyear Dunlop Tires Ops., S.A. v Brown,* 564 U.S. 915, 919 (2011) (citation omitted). The Fifth Circuit uses a three-step analysis to determine whether specific jurisdiction exists:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014). The plaintiff bears the burden of satisfying the first two prongs; if the plaintiff is successful, the burden shifts to the defendant to show that exercising jurisdiction would be unfair or unreasonable. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).

The main question is "whether there was 'some act by which the defendant purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Goodyear,* 564 U.S. at 924. "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Importantly, the plaintiff cannot supply "the only link between the defendant and the forum. Rather, jurisdiction is proper only where the *defendant* himself made deliberate contact with the forum." *Carmona*, 924 F.3d at 193 (emphasis added). In a breach of contract case, to determine whether a court has personal jurisdiction over a non-resident defendant, the Fifth Circuit looks to factors such as the place of contracting, the place of performance, and the law governing the contract. *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1069 (5th Cir. 1992). A court should use a "highly realistic approach" and take into account "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine whether "the defendant purposefully established minimum contacts" with the forum state. *Jones v. Artists Rights Enf't Corp.*, 789 F. App'x. at 423, 426 (5th Cir. 2019). *See also, Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 223 (5th Cir. 2012).

Vitoria relies on the following contacts with Texas to establish jurisdiction over the Defendants: (1) their initial contacts with the individual note holder DeLillo, who was in Texas, in

6

soliciting his loan to Braz Towers; (2) Defendant Hamdard's solicitation of an extension of the loan agreement while he knew DeLillo resided in Texas; and (3) Vitoria's location in Texas, and, as a collateral agent of the note holders, the fact that it had contacts with Defendants in that capacity, which originated from Texas. The Court will analyze each of these arguments separately.

### A. MET One and Merchant Equity Telecom

First, Vitoria relies on MET One's and Merchant Equity Telecom's contacts with DeLillo, a Texas resident, when they solicited his loan. To facilitate the financing of Braz Towers, Met One and Merchant Equity solicited the investment of approximately $2.4 million from a group of individual investor-lenders in 2014. The prospective lenders were based in various states. Dkt. No. 6-1 ¶ 5; Dkt. No. 22-1 ¶¶ 3-6. One of the individual lenders was Dr. Delillo, who was a Texas resident. Dkt. No. 22-1 ¶¶ 3-6. In the course of recruiting Dr. DeLillo, Jeff Gwin (who died in 2015), then the manager of both MET One and Merchant Equity, had several discussions with Dr. DeLillo over the phone, by email, and in person. *Id.* ¶¶ 3-8. At the time of all of the discussions, Dr. DeLillo was in Texas. *Id.* ¶ 5. For some of the discussions, Mr. Gwin visited Dr. DeLillo at his home in Texas to discuss the investment in Braz Towers. *Id.*

Defendants assert that this is not enough to cause them to have anticipated being subject to suit in Texas. In support of this, they point out that: (1) the loan documents, including the Notes, Membership Interest Pledge Agreement, and Settlement Agreement are all governed by Florida law; (2) in those same agreements, all parties agreed to submit to the jurisdiction of Florida courts; and (3) DeLillo is only one of seven lenders, and the only one of the group who resides in Texas. The Defendants otherwise have no relationship with Texas. Additionally, Defendants point out that DeLillo is not a party to this action and that Vitoria is not an original note holder, but only became

a note holder by assignment. Vitoria responds that Defendants purposely availed themselves of the privileges of doing business in Texas by their email communications, phone solicitations, and Gwin's in-person visits to DeLillo in Texas. Dkt. No. 22 at 7.

"Merely contracting with a resident of the forum state does not establish minimum contacts." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *see also McFadin*, 587 F.3d at 760 ("Jurisdiction must not be based on the fortuity of one party residing in the forum state."). For the same reason, the Fifth Circuit has held that the communications relating to the performance of a contract are not themselves sufficient to establish minimum contacts. *Id.; see also Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344-45 (5th Cir. 2004). In *Freudensprung*, the plaintiff submitted evidence that an out-of-state defendant contracted with a party residing in the forum state, "initiated and contemplated a long-term business relationship" with the party located in the forum, communicated with that party "concerning the development and execution of the contract," and wired money to the party located in the forum state. 379 F.3d at 345. The Fifth Circuit held that these contacts were insufficient to confer specific jurisdiction, stating that it has

> repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of [a] contract, and the existence of a contract between the non-resident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support exercise of specific jurisdiction over the non-resident defendant.

*Id.* at 344-45.  Analogously, the fact that a representative of MET One and Merchant Equity solicited, emailed, telephoned, and eventually contracted with DeLillo while he was in Texas is not enough to establish jurisdiction over those entities in Texas.

Vitoria argues that the fact that Gwin, who has since passed away, visited DeLillo in Texas in order to solicit a loan to Braz Towers should make a difference here. Dkt. No. 22-1.  The Fifth

8

Circuit has noted that a "single purposeful contact may confer jurisdiction." *Luv n' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 n.3 (5th Cir. 2006); *see also Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211 (5th Cir. 1999). But a defendant's contacts with a forum state will not result in specific jurisdiction if such contacts are "random, fortuitous, or attenuated." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 480 (1985). While a physical trip to Texas to negotiate agreements is relevant to the personal jurisdiction analysis, it is not by itself enough to settle the issue. While such a visit could be an important factor in the analysis, its significance may be diminished by other facts, such as, for example, whether the ultimate agreement that grows out of the visit contains a choice of law clause specifying that it be construed according to the laws of a different state. *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026, 1029 (5th Cir. 1983).

That is the situation here. The contracts with DeLillo specify the law of Florida as the choice of law and contain his agreement to submit to jurisdiction in Florida. Dkt. Nos. 14-2, 14-3, 14-4, and 14-6. Moreover, DeLillo was only one of several investors, and all of the others were located in states other than Texas. Indeed, it is fair to say that the fact that he was located in Texas was irrelevant to the terms of the contract itself. While loan payments were to be made to DeLillo in Texas, the evidence is that no payments were actually made. Dkt. No. 22-1 ¶ 7. Additionally, courts have noted that the place of payment is not determinative in the jurisdictional analysis. This case is like *Holt Oil & Gas v. Harvey*, 801 F.2d 773 (5th Cir. 1986), where the Fifth Circuit held that the defendant's communications directed to the forum state did not constitute purposeful availment because these communications "rested on nothing but 'the mere fortuity that [the plaintiff] happens to be a resident of the forum.'" *Id. at* 778 (quoting *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985) ).

Cases from this District have held that travel to Texas in order to negotiate an agreement is insufficient to establish personal jurisdiction over a defendant. *See Gross v. PowerBlock, Inc.*, 2019 WL 1313472, at *3 (W.D. Tex. Jan. 11, 2019), report and recommendation adopted, 2019 WL 1313452 (W.D. Tex. Jan. 31, 2019); *Dell Marketing, L.P. v. Incompass IT, Inc.*, 771 F. Supp. 2d 648, 655 (W.D. Tex. 2011) (concluding that allegations of the defendant's travel to Texas to negotiate two agreements and failure to abide by one of the agreements that gave rise to the plaintiff's claims were insufficient to establish personal jurisdiction). More importantly, the Fifth Circuit case law is consistent on this issue. *See Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999) ("Its mere presence at the three meetings in Houston, together with the noted correspondence and phone calls, is not sufficient to establish the requisite minimum contacts because the record is devoid of evidence that Ruhrgas made false statements at the meetings or that the alleged tortious conduct was aimed at activities in Texas."); *Hydrokinetics,* 700 F.2d at 1029; *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 313 (5th Cir. 2007).

Vitoria makes much of the fact that this was a loan transaction, and as such the payments were to be made to DeLillo in Texas "at his home address" and to his Texas bank account. But it has pointed to no controlling precedent that differentiates a loan agreement from any other type of contract. The Court is unconvinced by the argument and the out of circuit cases they cite. Indeed, as noted above, in *Freudensprung,* the Circuit held that mailing payments to the forum state, combined with contracting with a resident of the forum, was not sufficient to establish jurisdiction over the defendant in the forum. 379 F.3d 3at 344-45; *see also Stuart v. Spademan*, 772 F.2d 1185, 1194 (5th Cir. 1985) ("The random use of interstate commerce to negotiate and close a particular contract . . . and the mailing of payments to the forum do not constitute the minimum contacts

10

necessary to constitutionally exercise jurisdiction over Spademan."). Thus, the Court finds that the various contacts with DeLillo are insufficient to establish specific jurisdiction.

### B. Hamdard

Vitoria also relies on Hamdard's contacts with DeLillo as a basis of specific jurisdiction. Vitoria states that "at the time Defendant Hamdard solicited the investors' extensions of their loans, he was fully aware of the contractual duties [to make payments and send notices] to Dr. DeLillo in Texas." Dkt. No. 22 at 8. The Court finds that Hamdard's contacts with DeLillo are insufficient to establish specific jurisdiction over him or the other Defendants.

A defendant's conduct creates a sufficient relationship with the forum state only if the actions arise out of "contacts that the 'defendant himself' creates with the forum State." *Walden*, 134 S.Ct. at 1122 (quoting *Burger King*, 471 U.S. at 475). The limits of jurisdiction "principally protect the liberty of the nonresident defendant—not the convenience of the plaintiffs or third parties." *Id.* (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980)). The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)). Hamdard lives and works in New York. The sole Texas-related fact that Vitoria points to for its argument regarding Hamdard is the fact that he communicated with DeLillo (and all of the other note holders) to seek an extension of the loan agreement, and that, with regard to DeLillo, this happened when DeLillo was located in Texas. This, however, is a classic example of a "fortuitous" contact with the forum state, and an insufficient basis for personal jurisdiction. MET One and Merchant Equity had many more contacts with DeLillo while he was in Texas, yet those were insufficient to establish

jurisdiction, so the more limited contacts Hamdard had with DeLillo are clearly not enough to establish the minimum contacts with Texas necessary for the Court to exercise jurisdiction over Hamdard.

### C. Vitoria's Role as Collateral Agent

Lastly, Vitoria argues that Defendants have minimum contacts with Texas because it is DeLillo and the other investors' collateral agent, and as such is charged with collecting the amounts due to each lender. As noted, Vitoria is located in Texas. Vitoria is also a note holder, as one of the original holders (Jerome D. Goodman, a New Jersey resident), assigned his note to it.

One of the fundamental jurisdictional principles the Supreme Court has established is that the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Walden*, 134 S.Ct. at 1122. "Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be 'decisive in determining whether the defendant's due process rights are violated.'" *Id.* (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)). Accordingly, the Defendants' contacts with Texas cannot be established through the fact that Vitoria, which assumed the note of a New Jersey note holder, and which serves as all the note holders' collateral agent, happens to be based in Austin, Texas. "[I]t is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State." *Id.*

None of the Defendants or their representatives initiated contact with Vitoria or solicited its assumption of the transferred notes. Defendants had no control over who assumed or purchased Goodman's notes or who assumed the role of the other note holder's agent. Thus, their communications with Vitoria, as the owner of a note or the note holders' agent, cannot constitute purposeful availment of the benefits and protections of Texas law. Vitoria's contacts with the Defendants does not add to the jurisdictional analysis.

### E.     Conclusion

Because none of the Defendants have purposely directed their activities at Texas, the Court finds it does not have specific jurisdiction over them.[1]

### F.     Request for Jurisdictional Discovery

As an alternative to its response, Vitoria asserts that if the Court does not find that jurisdiction exists, it should permit Vitoria to conduct jurisdictional discovery. A district court has broad discretion regarding whether to permit a party to conduct jurisdictional discovery. *Wyatt v. Kaplan*, 686 F.2d 276, 283-84 (5th Cir. 1982). To be entitled to discovery, the party seeking discovery must make a "preliminary showing of jurisdiction." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005). "[D]iscovery on matters of personal jurisdiction need not be permitted unless the motion to dismiss raises issues of fact. . . . When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Kelly v. Syria Shell*

---

[1] For specific jurisdiction to exist, in addition to the defendant having "purposefully directed its activities at the forum state," the litigation must also "result[ ] from alleged injuries that arise out of or relate to those activities." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) (internal quotation marks omitted). Given the finding that the Defendants did not purposefully direct activities at Texas, the Court need not consider whether Vitoria's injuries arose out of the Defendant's Texas-based activities. Similarly, it also need not address whether the assertion of jurisdiction comports with due process. *See Monkton*, 768 F.3d at 433.

*Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) (internal punctuation and citation omitted). "A plaintiff seeking discovery on matters of personal jurisdiction is expected to identify the discovery needed, the facts expected to be obtained thereby, and how such information would support personal jurisdiction." *Mello Hielo Ice, Ltd. v. Ice Cold Vending LLC*, 2012 WL 104980, at *7 (N.D. Tex. Jan. 11, 2012). A court can deny leave to conduct jurisdictional discovery when the movant fails to specify the facts he believes discovery would uncover and how these facts would support personal jurisdiction. *See id.*; *see also King v. Hawgwild Air, LLC*, 2008 WL 2620099, at *8 (N.D. Tex. June 27, 2008).

Vitoria asserts that it should be entitled to jurisdictional discovery because Hamdard's Declaration states that he has been the manger of Braz Towers and MET One since May 2018, but does not say he was the manager of Merchant Equity. Vitoria asserts that his claim to be the manager of Merchant Equity in the settlement agreement may have thus been fraudulent, which could give rise to a cause of action for fraud, and specific personal jurisdiction over him. Dkt. No. 22 at 11. This, however, appears to be a red herring. Whether or not Hamdard was the manager of Merchant Equity at the time he signed the Settlement Agreement is irrelevant since it is undisputed that Merchant Equity conveyed all its interest in Braz Towers to MET One, and Merchant Equity was administratively dissolved by the Florida Department of State on September 28, 2018. It is undisputed that MET One is the sole member and 100% owner of Braz Towers. Discovery into this issue would serve no purpose.

Because Vitoria Telecom has failed to make a prima facie showing of jurisdiction over Defendants, and for the reasons just stated, the request for jurisdictional discovery should be denied.

## III.  RECOMMENDATION

Based upon the foregoing, the undersigned **RECOMMENDS** that the District Court **GRANT** Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and Failure to State a Claim (Dkt. No. 14) and **DISMISS** this case **WITHOUT PREJUDICE** for lack of jurisdiction. The Court **FURTHER RECOMMENDS** that any other pending motions or requests for relief be **DISMISSED** as **MOOT**.

## IV.  WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).  A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 22nd day of December, 2020.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE